UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHADI ZANDIEH, *et al.*,<br><br>    **Plaintiffs,**<br><br>    v.<br><br>MIKE POMPEO, SECRETARY,<br>DEPARTMENT OF STATE, *et al.*,<br><br>    **Defendants.** | Civil Action No. 20-919 (JEB) |

## MEMORANDUM OPINION

Wishing to bring her parents to the United States, Shadi Zandieh (Shadi), a U.S. citizen and attending physician at Robert Wood University Hospital in New Jersey, filed I-130 Immigration Petitions for Alien Relatives on behalf of her Iranian-national father, Mohammadhossein Zandieh (Zandieh), and mother, Fakhrossadat Mardiha (Mardiha), in April 2016. Although the U.S. Government awarded Mardiha a visa in 2017, Zandieh has had no such luck. His efforts to obtain a waiver of visa restrictions remain in limbo. To compel the Government to act, Plaintiffs have filed the present action against the Department of State, the Department of Homeland Security, the Federal Bureau of Investigation, and the U.S. Embassy in Ankara, Turkey. The current delay in waiver adjudication, Plaintiffs argue, amounts to a violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the Constitution's Due Process Clause. Defendants now move to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Although the Court finds that it does have jurisdiction to review Plaintiffs' claims, it also concludes that they are entitled to no relief here.

1

**I.     Background**

    A.     <u>Legal Background</u>

For U.S. citizens seeking to bring their foreign relatives to this country, the Immigration and Nationality Act requires that the process begins with the filing of a Form I-130 petition with the United States Customs and Immigration Service. <u>See</u> 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1), (b). If the petition is approved, the foreign national must then go to his local U.S. consulate to complete visa processing, which includes submitting an online Immigrant Visa and Alien Registration Application and appearing for an interview with a consular officer. <u>See</u> 22 C.F.R. § 42.67(a)(3).

After the interview, this officer must either issue the visa or refuse it. <u>See id.</u> § 42.81(a). If the latter, "he or she must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available." 9 Foreign Affairs Manual § 504.1-3(g). Throughout the process, the foreign national bears the burden of establishing that he "is not inadmissible" and "that he is entitled to the . . . status claimed." 8 U.S.C. § 1361.

Presidential Proclamation 9645, issued on September 24, 2017, established additional immigration restrictions that affect Zandieh's application. <u>See</u> 82 Fed. Reg. 45,161 (Sept. 24, 2017). With limited exceptions, the Proclamation bars foreign nationals from seven countries, including Iran, from entering the United States. <u>Id.</u> at 45,163; <u>see also</u> <u>Ghadami v. U.S. Dep't of Homeland Sec.</u>, No. 19-397, 2020 WL 1308376, at *2 (D.D.C. Mar. 19, 2020). Notably, one provision specifies that "consular officer[s] . . . may, in their discretion, grant waivers on a case-by-case basis to permit the entry" of otherwise-ineligible foreign nationals who satisfy a three-prong test: "(A) denying entry would cause the foreign national undue hardship; (B) entry would

not pose a threat to the national security or public safety . . . ; and (C) entry would be in the national interest." 82 Fed. Reg. at 45,168. This "waiver process," moreover, "played an important role in the [Supreme] Court's decision" to uphold the Proclamation in June 2018. See Ghadami, 2020 WL 1308376, at *2 (citing Trump v. Hawaii, 138 S. Ct. 2392, 2422–23 (2018)).

B. Factual Background

Shadi filed the I-130 petitions on April 18, 2016, and her parents cleared the preliminary hurdles without issue: the petitions were approved, and they completed their visa interviews on March 9, 2017, at the U.S. Embassy in Ankara. See ECF No. 1 (Complaint), ¶¶ 1, 2. After receiving her immigrant visa that same day, Mardiha was admitted to the United States as a permanent resident on September 2, 2017; she has resided with her daughter ever since. Id., ¶ 1.

Zandieh's application met a different fate. His visa was not issued after his March 9 interview, but was instead placed in "administrative processing." ECF No. 5-2 (Declaration of Chloe Dybdahl), ¶ 4. While it sat pending, President Trump issued Proclamation 9645, see Compl., ¶ 3; as a result, "the consular officer . . . refused the immigrant visa application of Mr. Zandieh," but automatically "considered [him] for a waiver of the proclamation's entry restrictions" on February 21, 2018. See Dybdahl Decl., ¶ 5.

On March 3, 2018, Zandieh submitted paperwork requested by the U.S. embassy "so that additional background checks could be completed." Compl., ¶ 4. One month later, "the consular officer made a preliminary determination" that Zandieh met "the personal hardship and national interest prongs," and then "consult[ed] with the Visa Office for interagency review regarding whether Mr. Zandieh's entry could pose a threat to national security or public safety." Dybdahl Decl., ¶ 6. As of now, Zandieh remains under "consideration for a waiver," and, "[i]n the meantime, the visa application remains refused in accordance with the Proclamation." Id., ¶ 7.

On April 7, 2020, about three years after Zandieh's interview at the U.S. Embassy and more than two years since the Government began considering him for a waiver, Plaintiffs filed this suit claiming that the delay in adjudicating his waiver eligibility violates both the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the Constitution's guarantee of due process under the Fifth Amendment. See Compl. at 23–24. They request relief in the form of a writ of mandamus and a preliminary injunction "directing Defendants to . . . make a decision on [Zandieh's] waiver," as well as a declaratory judgment that Defendants have violated the law and that Zandieh is entitled to "prompt adjudication of his waiver and immigrant visa application." Id. at 24. The Government has now moved to dismiss.

## II.     Legal Standard

Defendants' Motion invokes the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant brings a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "[t]he plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, No. 19-1049, 2020 WL 674778, at *2 (D.D.C. Feb. 11, 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 174 (D.D.C. 2020)). The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief

that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Though a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.    Analysis**

As just mentioned, Defendants maintain both that the Court lacks jurisdiction and that the Complaint does not articulate a legal claim. The Court considers each position separately.

    A.    Jurisdiction

In arguing against subject-matter jurisdiction here, the Government contends both that consular nonreviewability applies and that Zandieh's case is moot. Neither argument is persuasive.

        1.    *Consular Nonreviewability*

"Under the doctrine of consular nonreviewability, courts do not have jurisdiction to review visa denials because consular officers 'have complete discretion over issuance and revocation of visas.'" Ghadami, 2020 WL 1308376, at *4 (quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1158 n.2 (D.C. Cir. 1999)). This jurisdictional bar, however, "does not apply where the government has not made a final visa decision." P.K. v. Tillerson, 302 F. Supp. 3d 1, 11 (D.D.C. 2017); see also Ghadami, 2020 WL 1308376, at *5.

Defendants argue that, because "a consular officer has found Mr. Zandieh ineligible for a visa," this Court is precluded from reviewing that officer's decision. See ECF No. 5 (Mot. to Dismiss) at 7–8. In other words, the Government insists that a final decision has been made: Zandieh's visa application was refused.

But Plaintiffs are "not challenging the decision of consular officers to deny [Zandieh's] waiver or visa." ECF No. 6 (Pl. Opposition) at 7. They instead seek review of Defendants' failure to adjudicate Zandieh's waiver eligibility within a reasonable time and ask this Court to direct the Government to "make a decision on his waiver." Compl. at 24. While Defendants may well have declined Zandieh's initial visa application, Plaintiffs explain that they now await "a final decision." Id.

Several courts in this district recently have found that where a plaintiff's visa application has been refused, but he remains under consideration for a waiver from the same Presidential Proclamation, "the decision is not final" and consular nonreviewability is thus inapplicable. Ghadami, 2020 WL 1308376, at *5; see also Bagherian, 2020 WL 674778, at *3 (holding "doctrine of consular non-reviewability . . . inapplicable to" case in which waiver consideration is ongoing); Moghaddam v. Pompeo, 424 F. Supp. 3d 104, 114 (D.D.C. 2020) (rejecting applicability of doctrine where "[p]laintiffs d[id] not challenge the initial denial of [a plaintiff's] visa application," but instead sought adjudication of plaintiff's "waiver, which clearly remains pending and has not been denied"); Didban, 435 F. Supp. 3d at 174 (same); Sarlak v. Pompeo, No. 20-35, 2020 WL 3082018, at *3 (D.D.C. June 10, 2020) (same).

Finding this panoply of decisions convincing, the Court holds that the Government's reliance on consular nonreviewability is misplaced and that the doctrine does not bar judicial review here. Although Defendants rely on much of the aforementioned caselaw to defend the reasonableness of their waiver-adjudication timeline, see infra at 9–10, they acknowledge these cases' clear holdings regarding consular nonreviewability only in a footnote. See MTD at 8 n.1 ("Courts in this jurisdiction have held that the doctrine does not bar a claim for delay in adjudicating waiver eligibility."). The Court believes a little more transparency is preferable in

6

situations like this. In any event, Defendants' position regarding nonreviewability does not prevail.

        2.    *Mootness*

The Government also contends that "this action is moot" because "Zandieh's visa application was denied prior to Plaintiffs' filing their Complaint, and remains refused at this time." Id. at 10. As noted above, however, Plaintiffs seek an order for Defendants to adjudicate Zandieh's waiver eligibility, not the initial visa application, which in their view has been unreasonably delayed. See Compl. at 24. Such an order would plainly affect Plaintiffs' legal rights.

The Government, at any rate, argues the wrong doctrine. "As explained by the Supreme Court, '[T]he doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 178 (D.D.C. 2015) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000)). The fact that Defendants denied Zandieh's application "prior to Plaintiffs' filing their Complaint," therefore, would go to whether Plaintiffs had standing to file that complaint, not whether the case has since become moot. See MTD at 10. And, since requiring Defendants to act on Zandieh's waiver would redress his injury, he does have standing.

    B.    Merits

Satisfied with its jurisdiction, the Court will separately address Plaintiffs' causes of action.

1.  *APA Claim*

Plaintiffs principally claim that the Government's delay in adjudicating Zandieh's waiver violates the APA, which requires agencies to "conclude" matters presented to them "within a reasonable time." 5 U.S.C. § 555(b); see also Compl., ¶ 14. The APA, moreover, authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); see Bagherian, 2020 WL 674778, at *4.

In seeking dismissal, the Government first contends that the waiver program is "committed entirely to the discretion of the executive branch" and is thus unreviewable. See MTD at 11–13; 5 U.S.C. § 701(a)(2). Relatedly, Defendants urge that, as a "presidential action" "governed exclusively by the Proclamation," the waiver program is "not subject to the APA." MTD at 11–12. This position raises a "complex legal question for which there is not clear D.C. Circuit precedent." Bagherian, 2020 WL 674778, at *4. The Court can fortunately sidestep this morass. Following the lead of other courts, "because it finds that the delay asserted" here is "not unreasonable," it "need not decide whether plaintiffs' claims are reviewable under the APA." Ghadami, 2020 WL 1308376, at *7 (collecting cases that have similarly declined to decide issue).

In moving to the reasonableness of the delay, the Court must first calculate the relevant timeframe. Once again following the analysis of other judges in this district, it starts the clock on February 21, 2018, when the Government began to consider Zandieh for a waiver after refusing his visa application pursuant to the Proclamation. See Sarlak, 2020 WL 3082018, at *1, 5 (starting clock on date waiver-eligibility review began); Bagherian, 2020 WL 674778, at *2, 5 (same); Ghadami, 2020 WL 1308376, at *2, 8 & n.7 (same). The delay at issue, accordingly, is the 29 months from February 2018 to July 2020.

In determining whether that amount of time is reasonable, the Court turns, as it must, to the six-factor inquiry set out in Telecommunications Research & Action Center v. FCC (TRAC), 750 F.2d 70, 80 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

Ghadami, 2020 WL 1308376, at *7 (quoting In re People's Mojahedin Org. of Iran, 680 F.3d 832, 836–37 (D.C. Cir. 2012) (quoting TRAC, 750 F.2d at 79)); see also Sarlak, 2020 WL 3082018, at *5 (applying TRAC factors at motion-to-dismiss stage and collecting cases). Central to this analysis is consideration of "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." Bagherian, 2020 WL 674778, at *5 (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).

The first two TRAC factors favor the Government. "Congress has supplied no timeline for processing waiver applications," and Plaintiffs concede as much. Didban, 435 F. Supp. 3d at 176; Pl. Opp. at 22 ("[T]here is no statute or regulation that establishes any particular time frame for adjudication of a waiver . . . ."). Zandieh's contention that "it can reasonably be inferred that

9

it is the intent of the President to create an adjudication framework that mandates quick adjudication of waiver[s]," Pl. Opp. at 24, does not change the fact that "Congress has given the agencies wide discretion in the area of immigration processing." Bagherian, 2020 WL 674778, at *5 (quoting Skalka v. Kelly, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)); Sarlak, 2020 WL 3082018, at *5 (same); Ghadami, 2020 WL 1308376, at *8 (same). As discussed in detail below, courts in this district have found that, in the absence of a statutory timeline, it is not unreasonable under the APA when the Government takes between two and three years to adjudicate waivers to Proclamation 9645. See Sarlak, 2020 WL 3082018, at *6 ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide.") (citing Skalka, 246 F. Supp. 3d at 154).

The third and fifth factors, however, weigh in Zandieh's favor. The Government concedes this, see MTD at 15, but the Court will elaborate on the "plaintiffs' interest, health, and welfare" that are prejudiced by delay. Ghadami, 2020 WL 1308376, at *9. Shadi has not seen her father in three years, and her admirable work as a physician on the frontlines of this country's response to COVID-19 renders it highly unlikely that she will be able to visit him in the near future. See Pl. Opp. at 25. To support Shadi, Mardiha remains in the United States and cares for her granddaughter; as such, she has not been able to return to Iran and has now been separated from her husband of 51 years since September 2017. See id. at 26. The burdens on this family are plainly heavy ones. This Court thus "reminds the government that it must treat [Zandieh's] case with 'the sense of urgency one would expect when familial interests are at stake.'" Bagherian, 2020 WL 674778, at *6 (quoting Skalka, 246 F. Supp. 3d at 154).

The fourth factor, conversely, which requires accounting for the effects of expedited action on "agency activities of equal or greater priority," favors the Government. Ghadami,

10

2020 WL 1308376, at *9. Plaintiffs do not contest that "at least 13,000 visa applicants" are "undergoing wavier-eligibility review." MTD at 16; see Pl. Opp. at 23. As other courts have consistently noted when conducting TRAC analyses, delays stemming from resource-allocation decisions do not lend themselves to "judicial 'reordering[s] [of] agency priorities.'" Bagherian, 2020 WL 674778, at *6 (alterations in original) (quoting In re Barr Labs., Inc., 930 F.2d 72, 76 (D.C. Cir. 1991)); see also Sarlak, 2020 WL 3082018, at *6 (collecting cases). In doing so, those courts have abided by this Circuit's warning against providing judicial relief that would place the plaintiff "at the head of the queue" and "simply move[] all others back one space." In re Barr Labs., 930 F.2d at 75; see also Ghadami, 2020 WL 1308376, at *8 (quoting In re Barr Labs. for same proposition); Bagherian, 2020 WL 674778, at *6 (same).

The final factor is a wash. While Plaintiffs make only weak allegations of government impropriety, see Pl. Opp. at 27–28; Compl., ¶ 51, the TRAC analysis does not require the existence of such misconduct to deem a delay unreasonable. Its absence thus "does not count against [them] here." Ghadami, 2020 WL 1308376, at *9.

With these factors in mind, the Court ultimately concludes that Plaintiffs have not stated an unreasonable-delay claim under the APA. See Sarlak, 2020 WL 3082018, at *6 (collecting cases). While refraining from drawing bright lines, courts in this district have found waiver-adjudication delays of similar length reasonable. Id. at *6–7 (granting motion to dismiss unreasonable-delay claim based on 2-year delay); Ghadami, 2020 WL 1308376, at *8, 11 (same for 25-month delay); Bagherian, 2020 WL 674778, at *5–6 (same for 25-month delay); Didban, 435 F. Supp. 3d at 176–77 (same for 2-year delay). The Court recognizes that the delays in these cases were a few months shy of that currently endured by Zandieh, and it also recognizes that courts, facing growing delays, may well eventually need to set a point at which reasonableness

11

ends. But not here. In fact, several of this district's courts have noted that delays between three to five years are "often not unreasonable." Sarlak, 2020 WL 3082018, at *6 (quoting Yavari v. Pompeo, No. 19-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)); see also, e.g., Ghadami, 2020 WL 1308376, at *8 (citing same); Bagherian, 2020 WL 674778, at *5 (citing same); Didban, 435 F. Supp. 3d at 176 (quoting same).

The weight of these decisions, moreover, is not overcome by Plaintiffs' assertion that the Government's newfound capacity to adjudicate waiver claims more quickly — via its "enhanced automated screening and vetting process" — should inform what constitutes an "unreasonable delay." See Pl. Opp. at 21; ECF No. 6-3 (September 24, 2019, Congressional Testimony of Edward Ramotowski, Deputy Assistant Secretary, Bureau of Consular Affairs) at ECF p. 4. First, the testimony discussing this new system predates the district-court decisions on which the Court has relied here. See, e.g., Sarlak, 2020 WL 3082018, at *5 (noting this evidence "suggests that [plaintiff's] two-year wait may be unusual," but not that it is "unreasonable"). Second, the Court must be mindful of the "national security interests implicated and the volume of applications being processed." Bagherian, 2020 WL 674778, at *5 (citation omitted); see also MTD at 4–5 ("[M]ore than 13,000 visa applicants have been found by a consular officer preliminarily to meet the first two conditions for a waiver and are now under review to determine whether they meet the national security and public safety criterion."). Although this Court sympathizes with the substantial difficulties that Zandieh and his family have endured, "the government's interests in balancing its own priorities" and in ensuring careful national-security vetting outweigh Plaintiffs' interests in an immediate adjudication of the waiver at this time. See Bagherian, 2020 WL 674778, at *6; see also Ghadami, 2020 WL 1308376, at *9 (reaching same outcome but noting concerns "by the amount of time the waiver process is taking" and

encouraging Government to "devote the resources . . . needed to evaluate the many claims for waiver expeditiously").

###    2.    *Mandamus Claim*

Plaintiffs' mandamus claim fares no better than their APA claim. The standard for reviewing agency delay is "the same under both § 706(1) of the APA and the Mandamus Act." Bagherian, 2020 WL 674778, at *6 (quoting Skalka, 246 F. Supp. 3d at 152). As a result, the Court's finding that the 29-month delay is not unreasonable under the APA "applies with equal force to [Zandieh's] mandamus claim." Id.; see also Didban, 435 F. Supp. 3d at 177 ("Because Plaintiffs have failed to establish an undue delay, their claim for mandamus relief . . . necessarily fails as well."). In other words, if there is no clear duty to act, this Court cannot mandate that an agency take any particular steps.

###    3.    *Constitutional Claim*

Plaintiffs last assert that the Government's delay in adjudicating Zandieh's waiver violates Mardiha's due-process rights under the Fifth Amendment. See Compl., ¶¶ 66–68; Pl. Opp. 30–32. A necessary component of such a claim is a "liberty or property interest of which plaintiff has been deprived," Ghadami, 2020 WL 1308376, at *10 (quoting Swarthout v. Cooke, 562 U.S. 216, 219 (2011)), and here Plaintiffs contend that Mardiha's protected interest in her marriage satisfies this requirement. See Pl. Opp. at 31. Defendants respond that the waiver-adjudication process implicates no such interest; in doing so, they distinguish an individual's cognizable constitutional interest in marriage from her interest in living in the United States with her spouse. See MTD at 19–20; ECF No. 7 (Def. Reply) at 7–8. They are correct.

Courts in this Circuit have held that while the "individual's right to marry and the marital relationship" are constitutionally protected, these "rights are not implicated when one spouse is

13

removed or denied entry into the United States." Jathoul v. Clinton, 880 F. Supp. 2d 168, 171 (D.D.C. 2012) (quoting Udugampola v. Jacobs, 795 F. Supp. 2d 96, 105 (D.D.C. 2011)); see also Swartz v. Rogers, 254 F.2d 338, 339 (D.C. Cir. 1958). Although "'the choice of living abroad with [one's] spouse or living in this country without' them" imposes significant "burdens upon the marriage," it does "not in any way destroy the legal union" of the marriage itself. Rohrbaugh v. Pompeo, 394 F. Supp. 3d 128, 133 (D.D.C. 2019) (quoting Swartz, 254 F.2d at 339). That is, even if the waiver-adjudication delay amounts to a refusal of entry, the Government has "not violated any constitutionally protected right" because it has said only that "the residence of [Mardiha's spouse] . . . may not be in the United States." Singh v. Tillerson, 271 F. Supp. 3d 64, 72 (D.D.C. 2017) (quoting Mostofi v. Napolitano, 841 F. Supp. 2d 208, 213 (D.D.C. 2012)); see also Mostofi, 841 F. Supp. 2d at 212–213 (rejecting distinction between spouse's deportation and spouse's denial of entry for purposes of liberty-interest analysis).

Zandieh's citation to Bustamante v. Mukasey, 531 F.3d 1059 (9th Cir. 2008), moreover, does not move the needle. First, the Ninth Circuit there "did not consider 'whether the visa denial actually implicated the plaintiff's constitutional rights'"; it instead "accepted [the plaintiff's] allegation at face value." Jathoul, 880 F. Supp. 2d at 172 (alteration in original) (quoting Mostofi, 841 F. Supp. 2d at 212). Second, courts in our Circuit are bound by Swartz, which found no violation of the plaintiff's constitutional rights by her husband's deportation because it affected only the "physical conditions of the marriage," rather than "destroy[ing] the legal union which the marriage created." 254 F.2d at 339; see also Rohrbaugh, 394 F. Supp. 3d at 134 n.4 (noting plaintiff's reliance on Ninth Circuit precedent was "misplaced . . . [g]iven Swartz"); Jathoul, 880 F. Supp. 2d at 172 ("[T]his Court is bound by Swartz[,] . . . which found no violation of a wife's constitutionally protected liberty interest in her marriage when her

husband was deported because 'deportation would not in any way destroy the legal union . . . .'") (internal citation omitted); Mostofi, 841 F. Supp. 2d at 212 ("[T]his Circuit, unlike the Ninth Circuit, does not recognize consular decisions affecting only the 'physical conditions' of a marriage as implicating any constitutionally protected interests.").

The holding and reasoning of Swartz, moreover, cover denials of entry as well. See Udugampola, 795 F. Supp. 2d at 105 ("Courts have repeatedly held that these constitutional rights are not implicated when one spouse is removed or denied entry into the United States, however.") (emphasis added). This Court once again "declines the invitation" to follow Bustamante, and it finds that Plaintiffs have not stated a claim under the Fifth Amendment. Jathoul, 880 F. Supp. 2d at 172.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 29, 2020